# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| GANNETT CO., INC., GRAY LOCAL MEDIA, INC., NEXSTAR MEDIA GROUP, INC., SCRIPPS MEDIA, INC., TEGNA INC., NASHVILLE PUBLIC MEDIA, INC. *d/b/a* NASHVILLE BANNER, STATES NEWSROOM *d/b/a* TENNESSEE LOOKOUT,<br><br>              *Plaintiffs*,<br><br>   v.<br><br>JEFF LONG, *in his official capacity as Commissioner of the Tennessee Department of Safety and Homeland Security*, GLENN FUNK, *in his official capacity as District Attorney General for Nashville & Davidson County, Tennessee*, and JOHN DRAKE, *in his official capacity as Chief of Metropolitan Nashville Police Department*,<br><br>              *Defendants*. | CASE NO. 3:25-cv-00830<br>Hon. William L. Campbell, Jr.<br>Magistrate Judge Barbara D. Holmes<br><br>**REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

Paul R. McAdoo
pmcadoo@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
6688 Nolensville Rd. Suite 108-20
Brentwood, TN 37027
Phone: 615.823.3633

*Attorneys for Plaintiffs*

* Admitted pro hac vice

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... iii

ARGUMENT .................................................................................................................................. 1

    I.    This Court has jurisdiction to redress Plaintiffs' injuries ......................................... 1

    II.   The Act is void for vagueness. ................................................................................ 3

    III.  The Act violates the First Amendment. .................................................................. 4

    IV.  The remaining preliminary-injunction factors favor Plaintiffs, and any preliminary injunction should provide Plaintiffs with complete relief. ................. 5

CONCLUSION ............................................................................................................................... 5

**Cases**

*Am. C.L. Union of Ill. v. Alvarez,*
  679 F.3d 583 (7th Cir. 2012) .................................................................................. 2

*CBS Inc. v. Young,*
  522 F.2d 234 (6th Cir. 1975) .................................................................................. 2

*City of Chicago v. Morales,*
  527 U.S. 41 (1999) ........................................................................................... 1, 3, 4

*Deep South Today v. Murrill,*
  779 F. Supp. 3d 782 (M.D. La. 2025),
  *appeal docketed*, No. 25-30128 (5th Cir. Mar. 7, 2025) ................................. 1, 2, 4, 5

*Easyriders Freedom F.I.G.H.T. v. Hannigan,*
  92 F.3d 1486 (9th Cir. 1996) .................................................................................. 5

*In re Express-News Corp.,*
  695 F.2d 807 (5th Cir. 1982) .................................................................................. 2

*McCullen v. Coakley,*
  573 U.S. 464 (2014) ................................................................................................ 4

*Nicodemus v. City of South Bend,*
  137 F.4th 654 (7th Cir. 2025) ........................................................................... 2, 3, 4

*Reporters Comm. for Freedom of the Press v. Rokita,*
  147 F.4th 720 (7th Cir. 2025) ....................................................................... 1, 2, 3, 4, 5

*Schenck v. Pro-Choice Network of W. N.Y.,*
  519 U.S. 357 (1997) ................................................................................................ 5

*Shuttlesworth v. City of Birmingham,*
  382 U.S. 87 (1965) .................................................................................................. 3

*Sisters for Life, Inc. v. Louisville-Jefferson Cnty.,*
  56 F.4th 400 (6th Cir. 2022) ............................................................................... 4, 5

**Statutes**

2025 Tenn. Pub. Acts, ch. 409, § 5 ............................................................................................... 3

Ind. Code § 35-44.1-2-14 ............................................................................................................. 3

Tenn. Code Ann. § 39-11-404 ...................................................................................................... 1

**Other Authorities**

Rachel Harmon, *Law and Orders*,
 123 Colum. L. Rev. 943 (2023) ............................................................................................. 3

# ARGUMENT

Every court to address the question agrees that a police buffer-zone violates the Constitution if "the buffer law offers no 'guidance to the officer deciding whether [an order] should issue' in the first place." *Reporters Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720, 731 (7th Cir. 2025) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 62 (1999) (majority opinion)); *see also Deep South Today v. Murrill*, 779 F. Supp. 3d 782, 824 (M.D. La. 2025), *appeal docketed*, No. 25-30128 (5th Cir. Mar. 7, 2025). And every court to address the question agrees, too, that news outlets have standing to challenge such a law before an order puts their reporters to a choice between "self-censorship" and the risk of arrest. *Reporters Comm.*, 147 F.4th at 728; *Deep South Today*, 779 F. Supp. 3d at 804–08. Those principles likewise decide this case; Plaintiffs' motion should be granted.

## I. This Court has jurisdiction to redress Plaintiffs' injuries.

Defendants' lead argument maintains that news outlets are not injured when their journalists risk arrest. Dkt. 20 at 4–6, 7–8. Whether packaged as an argument about standing, *Ex Parte Young*, or the scope of Section 1983, the claim is meritless. For one, Tennessee law subjects corporations to criminal liability for misdemeanors committed by their agents "acting within the scope of the agent's employment and on behalf of the corporation." Tenn. Code Ann. § 39-11-404(a)(3). But even if that weren't so, news organizations—like other corporations—have their own First Amendment rights, which are impaired by restrictions that fall in literal terms on their employees.

1

*See CBS Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975) (news outlet could challenge order restricting litigants' ability to speak with the press).[1] Plaintiffs cannot publish news their reporters cannot gather. And while there is therefore no need for Plaintiffs to establish third-party standing, even through that lens, Plaintiffs would be entitled to assert the rights of their journalists. *See Deep South Today*, 779 F. Supp. 3d at 807–08.

In a back-up argument, Defendants say Plaintiffs' injuries are too speculative, *see* Dkt. 20 at 6–7, but never explain why the threat of enforcement is anything but credible. Plaintiffs' reporters have described that their First Amendment activity routinely draws instructions to stop approaching or retreat in scenarios where the Act now criminalizes their failure to comply, Partipilo Decl. ¶ 6; Cordan Decl. ¶ 7; Taylor Decl. ¶ 16, and those same orders now force Plaintiffs to choose between "self-censorship" and "flouting the buffer law," *Reporters Comm.*, 147 F.4th at 728—a classic Article III injury.

Finally, relying on *Nicodemus v. City of South Bend*, 137 F.4th 654 (7th Cir. 2025), Defendants say the law "does not subject someone to arrest for not backing up," only for approaching. Dkt. 20 at 7. Why that would matter to standing is mysterious; either way, the Act allows officers to forbid Plaintiffs' proposed conduct. *See Nicodemus*, 137 F.4th at 662 n.6. But regardless, Defendants are wrong. The text of the law at issue in

---

[1] *See also In re Express-News Corp.*, 695 F.2d 807, 808 & n.1 (5th Cir. 1982) (both news outlet and reporter could challenge court rule); *cf. Am. C.L. Union of Ill. v. Alvarez*, 679 F.3d 583, 593 (7th Cir. 2012) (organization could challenge wiretapping law where it intended "to use its employees and agents to audio record on-duty police officers in public places").

2
Case 3:25-cv-00830     Document 24     Filed 09/26/25     Page 6 of 10 PageID #: 253

*Nicodemus* (and struck down in *Reporters Committee*) was narrower than Tennessee's. *Compare* Ind. Code § 35-44.1-2-14 (liability attaches "after the law enforcement officer has ordered the person to stop approaching"), *with* 2025 Tenn. Pub. Acts, ch. 409, § 5(a) (liability attaches "after the officer has ordered the person to stop approaching or to retreat"). The Act therefore carries an even greater risk of inadvertent noncompliance.

## II. The Act is void for vagueness.

Remarkably, Defendants do not dispute that the Act's text says nothing about the reasons for which an officer can order an individual to retreat: "[a] good reason, a bad reason, [or] a reason the officer just makes up[.]" *Reporters Comm.*, 147 F.4th at 731. Instead, resting on a law review article, they maintain that "*preexisting, implicit* police authority" somewhere in the ether sets those limits. Dkt. 20 at 2. As the same article explains, the Supreme Court has twice rejected Defendants' view. Rachel Harmon, *Law and Orders*, 123 Colum. L. Rev. 943, 980–82 (2023) (citing *Morales*, 527 U.S. at 62 (majority opinion), and *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 88–90 (1965)). In both, the Court made clear that a law that punishes failure to obey orders must, itself, offer "guidance to the officer deciding whether such an order should issue." *Morales*, 527 U.S. at 62. Defendants' concession that the Act's text does not do so decides this case.

Alternatively, Defendants say the Act is not vague because it "only applies to certain situations: traffic stops, criminal investigations, and ongoing threats to public safety." Dkt. 20 at 3. But in *Morales*, too, it was not enough that the law "[did] not

3
Case 3:25-cv-00830    Document 24    Filed 09/26/25    Page 7 of 10 PageID #: 254

apply to people who are moving," because that "[did] not even address the question of how much discretion the police enjoy in deciding which stationary persons to disperse." 527 U.S. at 61–62. The Act's text does not require that an order have anything to do with any of the situations in which it applies; in each, it still allows an officer to order a person to retreat "because he had a bad breakfast[.]" *Reporters Comm.*, 147 F.4th at 731.

### III. The Act violates the First Amendment.

The Act likewise violates the First Amendment on its face and as applied to Plaintiffs' newsgathering. Fixating on whether the law refers to recording, Defendants never respond to the observation that even a law that "says nothing about speech on its face" triggers First Amendment scrutiny if it "restricts access to traditional public fora." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014); *see also Nicodemus*, 137 F.4th at 668–70 (police buffer triggers intermediate scrutiny on its face); *Deep South Today*, 779 F. Supp. 3d at 818 (same in as-applied challenge). And Defendants' insistence that Tennessee needed a "brightline-rule," Dkt. 20 at 13, only underlines that the Act is not tailored.

Not only can an officer issue an order for any reason or no reason, the Act's 25-foot sweep is plucked from nowhere, with no evidence to back it and no explanation why a "no-obstruction law" would not work. *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 406 (6th Cir. 2022); *see also Deep South Today*, 779 F. Supp. 3d at 818. And because Defendants (mistakenly) believe that the Act's buffer zone does not float, they never address the fact that "floating buffer zones burden more speech than

4

necessary to serve the relevant governmental interests." *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 378–79 (1997). Each of those flaws violates the First Amendment.

## IV. The remaining preliminary-injunction factors favor Plaintiffs, and any preliminary injunction should provide Plaintiffs with complete relief.

For the reasons given in Plaintiffs' opening memorandum, the remaining preliminary-injunction factors follow the merits. And while Defendants emphasize that relief must be party-specific, they shortchange the requirement that it be complete. Here, the Act is invalid in every application, and universal relief is "necessary to provide the *plaintiffs themselves* with complete relief," *Reporters Comm.*, 147 F.4th at 733, both because Plaintiffs rely on bystanders as "source material for stories," *id.*; *see* Cordan Decl. ¶ 8 ("[W]e will ask [bystanders] on our way about what they know[.]"), and because an injunction limited to the Plaintiffs would under-enforce Plaintiffs' rights unless every officer of the Tennessee Highway Patrol were prepared to visually recognize each of their journalists, *see Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1502 (9th Cir. 1996). At a minimum, though, it would make no sense to limit an injunction to "interviewing the Governor, gathering news at Metro Nashville Council meeting[s], or reporting from [] the Capitol Building," Dkt. 20 at 16, because all of the Act's applications to Plaintiffs are unconstitutional for the reasons already discussed.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' opening memorandum of law, Plaintiffs respectfully urge this Court to enjoin the Act's enforcement.

5

Dated: September 26, 2025                Respectfully submitted,

/s/ Paul R. McAdoo
Paul R. McAdoo
pmcadoo@rcfp.org
Grayson Clary*
gclary@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
6688 Nolensville Rd. Suite 108-20
Brentwood, TN 37027
Phone: 615.823.3633
Fax: 202.795.9310

*Attorneys for Plaintiffs*

* *Admitted pro hac vice*